IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.: 0:25-CV-60490

JOSE DAVID PEREZ RODRIGUEZ,

    Plaintiff,

vs.

FIRST ADVANTAGE BACKGROUND
SERVICES CORP.,

    Defendant.

**JURY TRIAL DEMANDED**

## COMPLAINT

Jose David Perez Rodriguez ("Plaintiff" or "Mr. Perez Rodriguez") by and through his counsel brings the following Complaint against First Advantage Background Services Corp. ("Defendant" or "FADV") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's employer, which falsely portrayed Plaintiff as a convicted felon.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant falsely reported to Plaintiff's employer that Plaintiff was convicted of felony Smuggling of Persons. Defendant's reporting is grossly inaccurate and untrue.

4. Plaintiff has never been charged with a felony in his life.

5. Plaintiff's offers his transportation services on the Lyft Inc. ("Lyft") platform. Lyft deactivated Plaintiff's account after receiving a background check report from Defendant, which included the inaccurate felony conviction, which does not belong to Plaintiff.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant reviewed the widely available public court records from Uvalde County, Texas regarding the felony conviction prior to publishing Plaintiff's report to his employer.

7. Had Defendant performed even a cursory review of the public court records, it would have discovered that the criminal record belongs to a different consumer who is wholly distinguishable from Plaintiff by their middle name, last name, suffix, and even resides in a different part of the country from Plaintiff.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10. Defendant's inaccurate report cost Plaintiff a good paying job and job security.

11. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities; loss of economic

opportunities; damage to his reputation; loss of sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

13. Jose David Perez Rodriguez ("Plaintiff" or "Mr. Perez Rodriguez") is a natural person residing in Miramar, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Defendant First Advantage Background Services Corp. ("Defendant" or "FADV") is a Florida corporation doing business throughout the United States, including the State of Florida and in this District, and has a principal place of business located at 1 Concourse Parkway NE, Suite 200, Atlanta, Georgia, 30328. FADV can be served at its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

15. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f).

16. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

17. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling

information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

20. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

21. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

22. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

23. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

24. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

25. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

26. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

27. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

28. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

29. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

//

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

30. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

31. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

32. The criminal background check industry takes in revenues in excess of three billion dollars, annually.

33. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the court records are rarely directly reviewed in creating criminal background checks.

34. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

36. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

37. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

38. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

39. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a felony conviction that belong to an unrelated consumer who has a different middle name, last name, suffix, address, and Social Security Number than Plaintiff.

40. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

**Defendant Published an Inaccurate Background Check Report to Lyft**

41. In or around January 2025, Plaintiff reactivated his Lyft account with the purpose of making it his sole source of income.

42. In or around January 2025, Plaintiff was subject to a routine background check.

43. Lyft contracted with Defendant to conduct background checks, including criminal background checks, on its drivers.

44. On or about January 11, 2025, Lyft ordered a criminal background check on Plaintiff from Defendant.

45. On or about January 25, 2025, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold the same to Lyft.

46. Within that consumer report, Defendant published inaccurate information about Plaintiff.

47. Specifically, Defendant's consumer report about Plaintiff included a felony conviction for "Smuggling of Persons" from Uvalde County, Texas, which appeared in the consumer report as follows:

| | |
|---|---|
| Case Reference # | 2023-09-15714-CR |
| Case Date | 19/Oct/2021 |
| Name on File | JOSE DAVID PEREZ RODRIGUEZ |
| DoB on File | 12/05/XXXX |
| Charge | SMUGGLING OF PERSONS |
| Charge Type | FELONY |
| Disposition | GUILTY |
| Disposition Date | 07/Feb/2024 |
| Sentence | PROBATION 6 YEARS; COURT COSTS 305; FINE 500; PRISON 6 YEARS SUSPENDED |

48. The criminal conviction reported by Defendant about Plaintiff to Lyft ***does not*** belong to Plaintiff.

49. Plaintiff has never been charged with or convicted of a felony in his life.

50. A cursory review of the widely available public court records confirms that the records belong to an unrelated consumer, Jose Luis Perez Jr. ("Convicted Perez Jr.").

51. Had Defendant actually consulted or obtained the widely available public court records regarding the felony conviction, it would have seen obvious discrepancies between Convicted Perez Jr. and Plaintiff.

52. The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Perez Jr. include the following:

   (a) Plaintiff's legal name is "Jose David Perez Rodriguez" and the criminal records belong to a "Jose Luis Perez Jr.," which is the widely available public records from Uvalde County, Texas;

   (b) Plaintiff has only ever resided in Florida since moving to the United States eight years ago from Venezuela, yet the public court records regarding the criminal conviction indicate that Convicted Perez Jr. resided in Texas at the time he committed the offenses; and,

   (c) Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the subject consumer report is different from that of Convicted Felon Perez Jr.

53. The sole reason the inaccurate criminal record was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Lyft.

54. Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal conviction belonged to an unrelated individual with a different middle name, last name, suffix, address, and Social Security Number than Plaintiff.

55. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Lyft Deactivates Plaintiff Account**

56. On or about January 27, 2025, Plaintiff received a Pre-Adverse Action Notice from Lyft via e-mail, informing him that they are considering his eligibility to work with them due to a consumer background report sold to them by Defendant.

57. On or about February 6, 2025, Plaintiff learned that his Lyft account was deactivated.

58. On the same day, Plaintiff received an e-mail stating "[b]ased in whole or part on information found in your background check, we regret to inform you that you are not eligible to continue to drive with Lyft."

59. Shortly thereafter, Plaintiff obtained a copy of the subject consumer report and was shocked and humiliated upon reviewing and realizing that the serious criminal conviction of another, namely Convicted Felon Perez Jr., was published in the consumer report Defendant sold about Plaintiff to Lyft.

60. Plaintiff was very panicked, confused, and concerned about the impact of Convicted Felon Perez Jr.'s serious criminal conviction reported on the subject consumer report – specifically, the impact of the same on his future.

61. Specifically, Defendant matched Plaintiff and Convicted Perez Jr. and published the criminal record of Convicted Perez Jr. onto the consumer report about Plaintiff and sold that report to Lyft.  Exculpatory public record information was widely available to Defendant prior to publishing Plaintiff's consumer report to Lyft, but Defendant failed to perform even a cursory review of such information.

62. Defendant's false report cost Plaintiff a promising, well-paying job with Lyft which was supposed to be Plaintiff's sole income to cover his expenses and support his sick father, whom he is living with.

63. Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek employment, Plaintiff remains unemployed.

64. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

65. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities; loss of economic opportunities; damage to his reputation; loss of sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

66. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

67. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

68. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

69. At all times pertinent hereto, the above-mentioned consumer report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

70. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

71. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities; loss of economic opportunities; damage to his reputation; loss of sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

72. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

73. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: March 13, 2025

*/s/ David Pinkhasov*
David Pinkhasov, FL # 1040933
CONSUMER ATTORNEYS, PLLC
68-29 Main Street
Flushing, NY 11367
T: (718) 701-4605
F: (718) 715-1750
E: dpinkhasov@consumerattorneys.com

*Attorneys for Plaintiff,*
*Jose David Perez Rodriguez*